Tanya Morrow on behalf of Mr. Wayne Houff. I did have the opportunity to brief the issues about the standards in this case. And so I was chomping at the bit as you were asking your questions in the Miller case. And I will tell you that I believe that this Court's decision in Pierce v. Muntz states what this Court's responsibility is with regard to the Oregon statute because of the analogy to the California statute. And I'll quote, Hayward specifically commands Federal courts to examine the reasonableness of the State court's application of the California sum evidence requirement, as well as the reasonableness of the State court's determinations of the facts in light of the evidence. In Oregon, however, we apply the substantial evidence review because that's the standard that the legislature chose to apply to the Parole Board's decisions in the administrative context. So that's the review that's not occurred in Mr. Houff's case. He's been asking for it, and no court in Oregon has reviewed it. And I believe that's what this Court's charged with doing. So I can turn to the merits now, unless you have some other questions regarding this case. But does that produce a different standard than the one that we seem to have settled upon in the earlier arguments? To the extent that Oregon court, the Supreme Court, in Davis v. the Parole Board, looked at the dangerous offender standard and discussed whether the clear and convincing evidence standard should apply for the Parole Board's decision or the preponderance of the evidence decision should apply, the Court merely decided that because the parolee has a burden or, excuse me, the risk of persuasion, that he should not want the clear and convincing evidence standard to apply. Davis did not set necessarily in this context what that burden of proof standard should be. In fact, I would suggest that the Court's applying a burden of proof in this context is contrary to what the legislature adopted when it adopted the administrative review standard of substantial evidence. But in any event, the Court can mesh the two. I believe, however, that what we look at is so analogous to what we had in Hayward except for the standard, because Oregon adopted a higher standard, that you're charged with doing what you said you needed to do in Hayward. Is substantial evidence really a higher standard than some evidence? Is that as some evidence is used in Hayward? Well, I sort of agree with counsel from AG's office in the last case. To the extent California has described and defined some evidence standard to require that whole review record of the record, which is what this Court has done in the case since Hayward, it is similar to the substantial evidence standard. But that's a major distinction, I believe. Substantial evidence standard in this State requires, undoubtedly, that whole review of the record. And it does require some weighing. I've identified for the Court, and we've been arguing, you know, since the district court level, that the State has set forth what substantial evidence means, and it's in that requiro decision that we've cited, and I can describe for you. But it really points to the fact that agency decisions under this standard of review cannot rest solely on hearsay. It cannot rest solely on untested hearsay. And to the extent, and we can get into some of the details in the merits of this case, to the extent that the board's decision relies on any of the statements made in the pre-sentence investigation report, Mr. Huff made some specific objections to their relying on those hearsay statements. And he had some specific objections to the fact that that report was written based on police reports and not the trial evidence. And so he got in a dispute with the board about that. Let me ask you another preliminary question. Mr. Huff was designated or found to be a dangerous, whatever it's called. Dangerous offender. Doesn't that change his sort of the question that the parole board is asking for him? He has to prove that he's not dangerous, right, or something? No. What does he have to prove? The board has to prove. What is happening at this hearing for him? Okay. He's a little bit different than Miller and Goh. Yes, to the extent that in Oregon we've got different rule schemes for different parole situations. And they vary widely. In the dangerous offender situation, because there is a minimum term set generally, the board doesn't need to do that. Let me just explain a little bit more. In the general indeterminate sentencing scheme, sometimes a minimum sentence is set by the court. Sometimes it's not. So in those cases, the board takes an initial review and sets the marker for when it's going to start reviewing for their eligibility to be released on parole. In dangerous offender scheme, the minimum term is set, and so they don't start the review process until they get close to that minimum term. And it's at that point. So the standards are very similar in a way. But under the dangerous offender standard, the court has to determine whether that prior condition, that prior condition, which has a standard of dangerousness that's, you know, not just any danger to the community. It's a danger to, let me get the actual terms here, the danger that, well, excuse me, the condition must seriously endanger the life or safety of others. The board has to determine whether that condition is still present and not in remission or whether or not the offender can't be controlled in the community. And he has to do that by a substantial evidence in the record. Now, what does the prisoner have to show? Well, maybe he comes in. What does he have to do? He might have a risk of persuasion, as the Davis court suggests, in the sense that he needs to be able to articulate and should argue that the evidence that the board is required by statute to produce demonstrates that he's not. But certainly, when he doesn't have the ability to produce his own evidence, like subpoenaing witnesses and cross-examining witnesses, that burden of production or persuasion is really only a risk of persuasion, as the Davis court suggests. The board is charged with bringing forth the evidence and then having to meet a certain standard of review that's there because Oregon legislature weighed the interest involved and wanted to ensure that there was going to be correct decision-making. Can you crystallize something for me? My understanding is in order to grant the parole date, the court has to or the board has to make a finding that he's not dangerous. They have to make a finding that the condition that he was his condition is not absent or in remission. So in other words, the board has to find that his condition is still at the same level of severity and the behavioral components of his condition are still there. Cut through with me. The issue really before the board is, is this his fault? Because he's convicted under this dangerous offender and denominated as such. So the issue is, is he still dangerous or not dangerous? And isn't the board charged with making a finding that he's not dangerous before they give him a parole date as opposed to saying he is dangerous? It's charged with determining. I'm sorry. I guess I may be missing the import. But it's charged with determining whether that condition is still present. The import is this. There's a difference in proving that somebody's not dangerous or making a finding that somebody's not dangerous versus that somebody is dangerous. Well, that's true. And it seems to me, you know, you're saying, well, substantial evidence. If the question is, does substantial evidence support a finding that he is dangerous, that's a very different question and perhaps a tougher hurdle to overcome than saying, well, we don't have substantial evidence that he's not dangerous. That sort of turns it back on him so that we're pretty clear he's not going to be dangerous. It forecloses a lot of possibilities. Well, I agree with your analysis, but I do believe that the standard requires the board to determine that he is still dangerous. Oh. No, no. What's the basis for that? The basis is, is that the standard is that they must find that he remains dangerous. Well, I read the statute. It says there is a reasonable cause to believe the prisoner is no longer dangerous. That's 144.228.1bA. If you'll give me a moment. I also believe it goes on to state that the condition is not absent or in remission. So in further clarification, that standard requires them to find that that same condition that made him dangerous at the time of the sentencing still exists. It's not in – it's not absent or in remission. That's the basis of the finding. In other words, we're going back to the initial finding of the sentencing court, and they have to decide that he's – he remains at that same level of dangerousness. Where's that language coming – where are you getting that language from about the condition? I'm sorry. I don't see that in the statute. Maybe I'm – but I don't have my reading glasses on. It's a little difficult to parse these. If you'll give me a moment. Then I look like a kind of an odd guy when I take off my glasses. Bury my name. I'm sorry. It's not jumping out at me. I've put all the standards in the footnotes here, and I'm – I'm – Well, maybe when you sit down, you can find it. No longer dangerous and remains dangerous. And I have argued that those terms refer back to the sentencing – sentencing determination. But if you could find where – how you – how you – Your Honor, I don't believe that there's any authority necessarily resolving that issue. That's just how you would interpret that. That is the interpretation, that it – it refers back because it talks about no longer dangerous, meaning referring back to the same level of dangerousness found by the sentencing court. I'm going to save some time now. Thank you. Okay. May it please the Court and Counsel, Jeremy Rex on behalf of the Respondent State. Petitioner's claim in this case is that the Oregon Parole Board violated his due process rights when it refused to grant him a release date. Petitioner is designated in Oregon as a dangerous offender. And the district court rejected his claim. This Court should affirm for essentially two reasons. And these are reasons that have been iterated already by my colleagues in the other murder review cases. So forgive me if some of this is a little redundant, but we will be discussing it in the context of a different statutory scheme. First is that Oregon's dangerous offender parole scheme does not give rise to a protected liberty interest that's cognizable in the habeas proceeding. And second is that even if it does, the parole board did not violate Petitioner's due process rights. The Board's decision came after notice in a hearing. It's supported by adequate evidence in the record either way that this Court determines that that standard is met, whether it is a some evidence standard or a substantial evidence standard. I think it's probably helpful to start with the discussion of the dangerous offender statutes. There's been a little bit of discussion of this already. And it's helpful, I think, to maybe go into a little more detail. Oregon offenders generally are given determinate sentences. This has been since 1989, Oregon enacted sentencing guidelines, which are determinate sentences set by the judge with a determinate period of post-prison supervision thereafter. Exceptions exist. Murder review statute that you've discussed with some of my colleagues already is one of those examples of an exception. And the dangerous offender statutes are another exception. The initial dangerous offender statute is found in ORS 161725. That's the statute that applies for the sentencing court. The sentencing court makes a series of findings, specifically whether the offender is dangerous and requires an extended incarceration term, whether he suffers from a severe personality disorder and is a danger to the life or safety of others. These findings are essentially a conclusion that the offender is dangerous, needs additional incarceration. The result of that is that rather than setting a sentencing guidelines determinate sentence, the sentencing judge sets an indeterminate sentence, up to 30 years. And included in that is a mandatory minimum term as well. Jump forward to the expiration of that mandatory minimum term and the Board of Parole takes over. Once the offender has finished the mandatory minimum term, they come and see the parole board. The question before the board is whether the offender is or I believe the exact statutory term is no longer dangerous. So an initial dangerousness finding has already been made by the sentencing court. And now the board has the challenge of deciding is the offender no longer dangerous. Oregon court case called Davis v. Board of Parole has told us that the offender bears the burden of persuasion in asserting so. That is, the offender comes before the board and must show that he is no longer dangerous. If the offender fails to do so, the board then defers to another hearing two years later. Under the statutory scheme, it could be two years or up to some later term. Typically, it's about two years that the board will hold the next hearing. If the offender does show that he is no longer dangerous, quote, no longer dangerous, then the board sets a release date. Upon receiving a release date, the expectation is that the offender will be released on that date unless certain specified, statutorily specified exceptions exist. So at the time that the offender comes for his first dangerous offender hearing, the expectation at that point still is that the offender will be serving his entire 30-year indeterminate sentence because he has been found to require an additionally lengthy sentence. Now, so our first argument, and for the Court's convenience, the 161725, that initial sentencing court decision, I looked in the briefing, and that's quoted in my – in the blue brief, in the opening brief at page 7. And the parole board statutes, I noticed, were quoted in our brief, in the red brief at page 15. And I believe that language is correct, that no longer dangerous language is from the 1993 version of the statute that's applicable in this case. So our first argument is that that statutory scheme does not create a – or give rise to a protected liberty interest. Essentially, the default position under the statutory scheme is that you will serve a 30-year indeterminate sentence. There is some possibility you will be released on parole, but it is not a guarantee. But doesn't that – because the possibility uses this mandatory language, doesn't that create the liberty interest? Does the board shall set the parole date if it finds that the Petitioner is shown he's no longer dangerous? If I'm applying for relief and I've got a good case, at least I've got hope and expectation that if I make this showing, then they have to grant me the relief. You're correct that the statute contains mandatory language. It does say the board shall – if the offender shows that he is no longer dangerous, the board shall set a release date. I think the way to explain our position on that is to compare that scheme to other statutory schemes like the Greenholtz line of cases that actually have been held to create a protected liberty interest. In those cases, the statutory scheme is a little bit flip-flopped. They generally include – they do include mandatory language as well, but they generally include language that states that the offender shall be released on a particular date unless the board makes a particular finding. In this case, it is if the offender makes a particular showing, then the – then the board shall issue a release date. Our position on that is essentially that the liberty interest is a – the liberty expectation that those cases – that those cases discuss is the expectation of release at a particular time. Under the normal parole statutes, under Oregon's normal parole statutes, in fact, you're given a date, a particular date upon which you will be released into the community. Taking that date away is taking something away from an offender that he possesses. That is, he has a date in mind that he's been told you will be released on this particular date and time, and a parole board sweeps in and says, because we've made a particular finding, we're stripping that date from you. Our position is that this statute is different, and in that sense it creates – it does not create the same liberty interest. But it creates some liberty interest. I mean, otherwise, how would the Oregon Supreme Court have a case to rule on in Davis? They would rule on the statutory – the statutory basis to make sure that the board applied the correct rules in doing so. But presumably, I mean, the inmate didn't win in Davis, but if the inmate won, presumably he would have received some form of relief. Would receive relief. But the fact that you can receive relief on an appellate review under violation of a statutory scheme, I don't know that that necessarily gives rise to a protected due process. Well, if the Oregon court is prepared to say, inmate gets relief, presumably that relief translates into something. Why isn't that something, a liberty interest under the federal due process clause? Well, because I think our position is that not every interest is a protected liberty interest. That is, you may have an interest – In this case, it leads to him either staying in or getting out. That's kind of the epitome of a liberty interest. It would lead to the receipt of a release date, which is, again, it's an intermediate step toward receiving a release date. And I know that release date statutes aren't necessarily at issue in this case, but  that that statute would create a cognizable liberty interest. How about getting to the merits of this case? Assume for a moment that we decide that there is a liberty interest, so there's a due process right. What justifies the Board's decision here? So assuming that there is a protected due process interest, then the question is whether the Board violated Petitioner's due process rights. As I stated before, this hearing comes after notice in a hearing. Notice and opportunity to be heard precedes the Board's order. It's also subject to substantial evidence review in the Oregon courts. All of those are factors that go toward the satisfaction of Petitioner's due process rights. There's been some question about whether the standard before this Court is a some-evidence standard or a substantial-evidence standard. In our briefing, we talked about the some-evidence standard under – I believe it's JANSEC versus Oregon. We believe that that was the standard. I think that we would still hold to that at this point. I think I can argue this case under either standard and that this Court should affirm under either standard. Essentially – let me flip to the next page. The evidence in this case is in sort of rough bullet points. We would start with the offender's background and the actual facts of the particular crime that lead to this – lead to these convictions. There's no Oregon case law that I'm aware of that would preclude the Board from considering that kind of background, from considering the underlying facts of the crime, particularly when it's considered in light of a psychological evaluation in light of other – you know, other evidence of subsequent conduct. So what we have here is a background of sort of sexually inappropriate conduct with children. Petitioner drilling holes through walls, you know, peeping holes through walls to watch children in showers, watching children in the neighborhood, inviting children over to the home. This case ends up as the sexual abuse of, I believe, a three- or four-year-old girl, a threat to kill that girl if she were to reveal the sexual abuse to her parents. Before the Board, Petitioner – the evidence – Petitioner participated in a psychological evaluation. The evaluator said that Petitioner was a moderate risk of re-offense. He described some conditions that Petitioner was suffering from and suggested that he is vulnerable to re-offend. Particularly, the psychological evaluator stated that – diagnosed Petitioner with and stated – and this is a sort of rough quote – that he lacks insight into the risks that he poses to children and said either he is extremely naive about the risk that he poses to children or he is consciously misrepresenting himself. That is to say, he doesn't understand the risk that he poses to children upon his release. The Board, upon discussing his crimes with him, Petitioner related that these crimes were a mere coincidence, again reiterating that he lacks insight into the nature of the crimes, lacks insight into his own risk to children. I see that my red light is on. And so in addition to that, he's – I shouldn't say in addition to that. Essentially, all of that evidence combines to say that Petitioner lacks insight into the risk that he poses to children. The risk that his legitimate diagnosis of pedophilia and antisocial personality disorder, those diagnoses create a risk that he will offend again, that he could potentially harm another child. Until he understands the nature of that risk, I think the Board is entitled to conclude, a reasonable person could conclude, that he is potentially still dangerous, that he has not sustained his burden of showing that he is no longer dangerous. The substantial evidence standard in Oregon is whether a reasonable person could come to that conclusion, not that they would necessarily, but whether they could. And our position is that here the Board did reach that decision and that a reasonable person could, unless the Court has further questions. Is he being set for another review? Do you know? I'm trying to think. The review hearings generally take place every two years. So my – I believe that this review hearing was more than two years ago, so most likely he has. I know that in Oregon we deal with that pretty commonly in the State courts where an offender goes before the Board and it takes so long to get through to the next review cycle that we deal with mootness questions that come up. Generally, Oregon courts have resolved that by suggesting that if they were to go before the Board a second time and be released, then the earlier release hearing would be deemed moot. I imagine in this case it would be the same analysis. If he were to go before the Board again and actually receive a release date, it would probably make the earlier one moot. But I don't know off the top of my head whether he has had another review hearing. My assumption is that he has. They're generally two years. No, this was 2003, so it seems overwhelming that at some point. Yeah. And it's most – they're generally every two years, but they can be deferred longer than two years under the current statutes. So it's possible that he was deferred longer than two years, but most likely he's received several subsequent reviews. Does the determinate – I guess as the counsel was explaining to us on the last case, does determinate sentencing on the abuse count affect his eligibility for the release date? I'm not sure. I don't remember how long those determinate sentences were. If those determinate sentences – So 75 months each. 75 months each. If they were – if he's already served them, I don't know that they would have any effect on the current parole board proceedings. He would still be in the middle – he would be somewhere in the middle of an indeterminate 30-year sentence. And the Board isn't going to give him a release date until he satisfies these dangerous offender parole release statutes. So it's possible that a parole offender could – a dangerous offender could reach the mandatory minimum on the dangerous offender statute, receive a release date, but not have satisfied – not yet have satisfied the determinate sentence on the other statutes and would not – and consequently would not be releasable. I don't believe that's the case here. I would be surprised if it was. Okay. So most likely not. That's all I have. Okay. Thank you. I'd like to just make a couple comments. We keep referring to the standard as the standard that the Petitioner must meet, but the statute specifically says that the standard is one in which the Board has to find. And it does not specifically set forth any burden of proof on the parolee or, excuse me, the inmate. Now, if the Board has determined subsequent to Mr. Huff's case, because as you recall, in this case the Board in its administrative review said it found that standard by substantial evidence. Let me cut right to the evidence. We've got a – the clinical psychologist's report concludes that he's suffering from the same attitude and presentation he gave me two years ago and at the time of his arrest in 1998, thus I must conclude he still suffers from the same personality disorder at this time. How can that not satisfy whatever evidentiary requirement there is for the Board's decision? As we've argued, Your Honor, and I will stand on the briefs to the extent we don't get a chance to discuss each of these points, the diagnosis in and of itself is not appropriate, we believe, to meet the standard because it doesn't talk at all about the behavioral aspects of the diagnosis. It's a clinical diagnosis, if anything. And so it is up to the Board to determine forensically whether the diagnosis supports a finding that he remains dangerous to the point of – But we know what the Board decided. Why isn't this evidence sufficient to justify it? Because it does not discuss whether or not Mr. Hough is capable of controlling any behavior that might be associated with the condition in and of itself. Well, it pretty clearly does discuss it. It says he minimizes the serious offenses, little insight to the critical aspects of an effective relapse prevention plan. He disregards the – despite admitting to previous alcohol and drug influences and impulse control, he doesn't believe he'd be tempted to use again. All of those are very practical assessments. I respectfully disagree, however, about whether those talk about whether he is capable of controlling any symptoms associated with the diagnosis. What those findings – Well, he wasn't before, and if the diagnosis is the same, well, why should anybody believe he would be now? Well, the – Or in 2003. What I believe the findings that are primarily what you've read and what the Board primarily finds in this case is findings with regard to a dispute that Mr. Hough has regarding those sexual abuse counts and his maintaining his innocence and challenging them. If you read the entire hearing record, he – there was a – it was evidence that the Board felt that he needed to give up his challenge, give up his maintaining his innocence with regard to those substance abuse counts, and that otherwise he lacked the insight that they believed he needed to have in order to be deemed not to be a serious – you know, to be not – to have a condition that not – doesn't provide the propensity to create or to commit serious – crimes that can seriously endanger the health or – serious endanger the life or the health or safety of any – you know, anybody out there. So, excuse me. I'm tripping up over the standard here. It's been a long morning. I've answered all your questions back there in my head. So, if you look at the total record, what you really have here is, again, talking about what Mr. Bordenstein suggested is this idea that we have this criteria of insight into the crime. Does that really answer what we've argued? Is that – even that doesn't answer the substantive standard here, which is whether or not he remains dangerous to the level of dangerousness that the Huntley case, as well as the standards, suggest the Board has to find. And if, in fact, he has some legitimate concerns about those sexual abuse counts, which he has continued to maintain, he argued and – and essentially asked the Board members to provide him an objective response to the fact that he has not – he has not given up his challenge to those – those counts. Thank you. Thank you. We appreciate counsel's arguments and the cases submitted.
judges: Burns, Paez, Clifton